In the Matter of PARENT TEACHER ASSOCIATION OF P.S. 124M et al., Respondents, v BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK et al., Appellants, and JUDITH CHIN, Intervenor-Appellant.

First Department, June 23, 1988

### APPEARANCES OF COUNSEL

*Ann Hsiung* of counsel *(Sandy Hom* with her on the brief; *Hom & Hsiung,* attorneys), for respondents.

*Elizabeth I. Freedman* of counsel *(Francis F. Caputo* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellants.

*Jeffrey S. Karp* of counsel *(Halberstam Ellis Zeif Funk Shebitz & Karp, P. C.,* attorneys), for intervenor-appellant.

### OPINION OF THE COURT

CARRO, J.

The proceeding before us requires that we determine the justiciability and ripeness for review of a directive by a Community School District Superintendent pertaining to the selection process for principal of an elementary school. Prior to doing so, a review of the facts is in order.

In the latter part of 1984, Superintendent Hannon of Community School District 2 in Manhattan informed the Parents' Association of P.S. 124M, an elementary school in District 2, that as of September 1985 the position of principal for P.S. 124M would be vacant. Pursuant to Special Circular No. 30R and article IX, § 1 of the bylaws of Community School Board 2, the Board which governs the subject district, a screening committee was formed in December 1984 to take part in the selection process.

Special Circular No. 30R, issued by the Office of the Chancellor of the Board of Education of the City of New York, sets

forth the regulations governing the assignment and appointments of supervisors, such as school principals. The role of a Parents' Association in the selection process is delineated under section III, where it is specifically described as "advisory only". (Special Circular No. 30R [III] [A] [3] [c].) The Parents' Associations are entitled to be notified of vacancies; participate in the development of selection criteria; have representation on the screening committee; review resumés; interview candidates; make recommendations; and be notified of the final decision. *(Id.,* at [III] [A] [3] [a], [b], [c].)

After the screening committee interviews candidates and makes recommendations to the Community School District Superintendent, the superintendent, in turn, makes recommendations to the Community School Board, which has the ultimate authority to make the appointment. (Education Law § 2590-j [4] [d]; Special Circular No. 30R [III] [A] [3] [c].) While the Superintendent has "the right to submit additional names to the Screening Committee for consideration and interview from the Personal Profiles submitted" *(id.,* at [III] [A] [10] [b]), the persons the Superintendent recommends to the School Board must be among those who have been interviewed by the screening committee. *(Id.,* at [III] [A] [10] [c].)

Having been unsuccessful in finding qualified applicants to recommend to the Superintendent, the Parents' Association and the screening committee sought to compel the Community School Board in April 1986 to readvertise the position. It was ultimately agreed that the screening committee would instead canvass lists promulgated in 1985, 1984 and 1983 of eligible candidates for the position of day elementary school principal. Among the applications yielded as a result of this canvassing procedure was that of Judith Chin who appeared on the June 1985 list. Judith Chin had also submitted a more recent resumé, dated June 21, 1986, directly to the Community School Board office. By this time, the selection process was already two years old and the pressure was mounting to appoint a principal as expeditiously as possible.

Having reviewed Chin's credentials, the Superintendent requested that the screening committee add Ms. Chin to the list of applicants to be interviewed and also directed that the screening process be completed by October 25, 1986, to permit the Community School Board to appoint a principal at its next scheduled meeting on October 28, 1986. Asserting that Chin lacked the requisite five years of administrative experience and that her July 1986 resumé was inconsistent with an

earlier one, the screening committee refused to interview Chin. At the Superintendent's refusal to withdraw her direction to have Chin interviewed by the screening committee, petitioners Parents' Association and the screening committee responded by commencing this CPLR article 78 proceeding, seeking declaratory and injunctive relief against the Superintendent's direction. While the proceeding was pending, petitioners secured a temporary restraining order barring respondents from directing or conducting interviews and barring them from making any appointment, whether on an interim, acting or permanent basis.

■ ■ Despite serious challenges to the justiciability of the issues before it and their ripeness for review, the court below determined that it would hold a full hearing on the central point of contention, Chin's eligibility for the position. Subsequently, in its written decision the court noted that, generally, matters pertaining to the administration of a school system should be handled within the framework of the Department of Education. Additionally, the court acknowledged that matters not yet ripe for determination should also not be considered by a court. Nevertheless, the court reached the merits of the controversy to the extent of determining Chin's qualifications, on the purported grounds that not to do so would be a waste of judicial resources, considering that extensive testimony on the matter had been taken. This evidence, the court concluded, "leads inescapably to the conclusion that Ms. Chin lacks the requisite administrative experience." As to the remaining issues concerning the respective roles of the Superintendent and screening committee in the selection process, the court concluded that these were not yet ripe for adjudication. Accordingly, except to grant the relief sought of finding Chin unqualified and determining that the screening committee was not required to interview her, the petition was otherwise denied and dismissed. We reverse, concluding beyond any doubt that this petition should have been dismissed in its entirety.

■ The nonjusticiability of this "controversy" aside for the moment, this article 78 petition should have been dismissed outright on the independent grounds that no final determination had been issued and that petitioners have failed to exhaust their administrative remedies. CPLR 7801 (1) unequivocally states that no determination shall be challenged in an article 78 proceeding "which is not final or can be adequately reviewed by appeal to a court or to some other

body or officer". A determination is deemed final and binding and thereby ripe for review "when it 'has its impact' upon the petitioner who is thereby aggrieved" *(Matter of Edmead v McGuire,* 67 NY2d 714, 716). The concept of impact requires certainty and immediacy of harm, and "[a] fortiori, the controversy cannot be ripe if the claimed harm may be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 520.)

Petitioners' claim that the Superintendent's direction that they interview Chin aggrieves them and causes them "hardship" is unpersuasive. Petitioners, to boot, reveal the wholly conjectural nature of their injury when they candidly admit their true reason for challenging the Superintendent's direction: to prevent Chin from being appointed principal, since the Superintendent can only recommend to the Community School Board those applicants interviewed by the screening committee. On the face of their own argument, then, there is no mistaking that petitioners are not challenging an action that will certainly and with immediacy harm them, but are merely attempting to prevent a speculative harm from taking place. The interview process is but an intermediate stage in the selection process and will not guarantee that the Community School Board will appoint Chin. There has been no definitive stand taken by any school official that inflicts concrete, palpable injury on petitioners. Interviewing Chin will have no immediate and harmful impact on petitioners, and resort to a judicial forum should not be had merely to entangle it in abstract or hypothetical problems. *(See, de St. Aubin v Flacke,* 68 NY2d 66, 75.)

Furthermore, even were there a final determination inflicting concrete harm, there would still be no finality for purposes of an article 78 proceeding, since there has been no exhaustion of administrative remedies. The Legislature has established an intricate system of review for persons who perceive themselves aggrieved by acts of local school officials. (Education Law § 310, esp [7].) If and when petitioners are aggrieved by a Community School Board appointment, petitioners may have that action reviewed by the Chancellor of the City School District pursuant to Education Law § 2590-*l*. The Chancellor's determination may be appealed to the City of New York Board of Education. (Education Law § 2590-*l* [2]; § 2590-g [10].) Further appeal, if necessary, may be had to the Commissioner of Education. (Education Law § 2590-g [10] [c].) These statutory

avenues of administrative review must be pursued before a court can intervene in an administrative dispute. *(Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57.) Petitioners' argument of the futility of pursuing administrative remedies *(see, Watergate II Apts. v Buffalo Sewer Auth., supra,* at 57), is illogical and unfounded, for the officials before whom the administrative appeals would be held have had no involvement in this matter and have expressed no opinion in the controversy. Furthermore, the decision of the court below to reach the merits of the controversy surrounding Chin's qualifications, despite the above problems, in order not to waste judicial resources, was an improvident exercise of the court's discretion.

█ Finally, absent a showing of an ultra vires act or a failure to perform a required act, the decision of a school official involving an inherently administrative process, which is uniquely part of that official's function and expertise, presents a nonjusticiable controversy. *(Matter of Ferrer v Quinones,* 132 AD2d 277, 286; *see also, James v Board of Educ.,* 42 NY2d 357, 366-367.) The particular action petitioners are challenging, the Superintendent's decision to have the committee interview Judith Chin, is an action involving an administrative policy decision by an appointed official, requiring the exercise of her expertise and professional discretion in matters that are essentially educational and administrative and within the scope of her official functions. It is therefore nonjusticiable. *(Supra.)* The role of the screening committee in this administrative process is, in contrast, limited to an advisory one, and the committee is in no position to compel judicial involvement in its disagreement with the Superintendent over an administrative matter. In fact, contrary to the screening committee's suggestion that the Superintendent has committed a patently unauthorized act, thereby warranting judicial intervention, it is clear that the Superintendent is specifically authorized under Special Circular No. 30R (III) (A) (10) (b) to submit names of candidates to be interviewed by the screening committee. Thus, petitioners have failed to meet their burden of proving that the Superintendent has committed an ultra vires act such as would warrant judicial intervention in this manifestly policy-imbued controversy.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Edith Miller, J.), entered May 6, 1987, which granted the article 78 petition to the extent of adjudging that petitioner screening committee for

principal of P.S. 124M is not required to interview Judith Joy Chin for the existing vacant position of principal of P.S. 124M and that Ms. Chin may not be considered for that vacant position, should be reversed, on the law, and the petition denied and dismissed in its entirety, without costs.

MURPHY, P. J., SANDLER, MILONAS and ROSENBERGER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on May 6, 1987, unanimously reversed, on the law, and the petition denied and dismissed in its entirety, without costs and without disbursements.