■ In the Matter of JOINT QUEENSVIEW HOUSING ENTERPRISE, INC., et al., Respondents, v STANLEY E. GRAYSON, as Commissioner of Finance of the City of New York, Appellant.

Joint Queensview Housing Enterprise, Inc. (Joint Queensview), organized in 1948, and Lincoln Guild Housing Corporation (Lincoln Guild), organized in 1957, are two multi-unit housing cooperatives, created under the New York State Redevelopment Companies Law, now codified in article V of the Private Housing Finance Law. While Joint Queensview's primary asset is a seven hundred twenty-six unit housing development, located in Long Island City, Queens County, Lincoln Guild's primary asset is a four hundred twenty unit housing development, located in New York County.

The purpose of the Redevelopment Companies Law was to provide for the development and maintenance of moderate income housing in New York City. In exchange for Joint Queensview and Lincoln Guild accepting various government controls, such as a limited return on investment (Private Housing Finance Law § 107), regulation by the supervising agency (Private Housing Finance Law § 120), limitations on the amount of profit that could be realized from the resale of the shares of stock (Private Housing Finance Law § 128), and limitations by the City of New York (City) on rent charges, the City granted to both Joint Queensview and Lincoln Guild a twenty-five year abatement of City real estate taxes.

After the expiration of their twenty-five year tax abatement, commencing in 1985, Joint Queensview and Lincoln Guild sought the advice of various Federal, State and City agencies, as to how they could reconstitute themselves as ordinary business corporations, free of governmental supervision, and avoid undesirable tax consequences.

In January 1987, the New York Secretary of State advised Joint Queensview and Lincoln Guild that, although a share for share exchange between a business corporation and a redevelopment company, followed by a dissolution of the redevelopment company, would satisfy the dissolution requirements of Private Housing Finance Law § 123, a statutory merger would not. Subsequent to the receipt of the opinion of the Secretary of State, Joint Queensview and Lincoln Guild requested advisory rulings from the IRS and New York State Department of Taxation and Finance, and those agencies indicated that no income or gains tax consequences would be recognized by either one of those taxing authorities from a reconstitution of the redevelopment companies, based upon the method of a share for share exchange.

Finally, Joint Queensview and Lincoln Guild approached the City Department of Finance (City Finance) for an advisory ruling, as to whether the proposed reconstitutions, if effectuated by a share for share exchange, would give rise to any City tax liability. By two advisory opinion letters, dated June 6, 1988 and July 12, 1988, City Finance advised Joint Queensview and Lincoln Guild that the proposed transactions would be taxable events, under the City Real Property Transfer Tax (Administrative Code of City of New York § 11-2101 *et seq.*).

While the proposed reconstitution plans were still tentative, in October 1988, Joint Queensview and Lincoln Guild (petitioners) instituted, pursuant to CPLR article 78, a proceeding against City Finance (respondent) to annul the two advisory opinion letters, and for related relief. In response, respondent cross-moved to dismiss the petition, and, by order, entered March 10, 1989, the Motion Court denied same. Following the joinder of issue, by order, entered August 14, 1990, the Motion Court granted the petition. Respondent appeals.

Since the conclusions contained in the advisory opinion letters are based upon hypothetical prospective transactions, we find that those letters do not constitute final determinations of tax liability by the respondent against petitioners. Pursuant to the provisions of CPLR article 78, "a proceeding * * * shall not be used to challenge a determination" of an administrative agency, such as respondent, "which is not final" (CPLR 7801 [1]).

Moreover, in view of the fact that petitioners can still decide not to use the method of a share for share exchange to reconstitute their redevelopment companies, we find that petitioners have not been aggrieved, since, at this point in time, the anticipated taxable effect of the advisory opinion letters on them "is insignificant, remote or contingent[, and therefore] the controversy is not ripe [for judicial determination]" *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 520 [1986], *cert denied* 479 US 985 [1986]; *Matter of Parent Teacher Assn. v Board of Educ.,* 138 AD2d 108, 112 [1st Dept 1988]).

It is well settled law that "[t]he courts of New York do not issue advisory opinions for the fundamental reason that in this State '[t]he giving of such opinions is not the exercise of the judicial function' *(Matter of State Indus. Commn.,* 224 NY 13, 16 [Cardozo, J.])" *(Cuomo v Long Is. Light. Co.,* 71 NY2d 349, 354 [1988]). Applying that legal authority to the facts herein, indicating that the petitioners still have the option to

either restructure or even abandon the proposed hypothetical transactions, we find that the Motion Court erred in granting the petition, since its judgment was, in substance, an advisory "opinion, for the future guidance of the parties" *(Matter of Christopher v City of Buffalo,* 88 AD2d 777 [1982]).

Based upon the fact that respondent performs a useful public service, by its practice of issuing advisory opinion letters to taxpayers, concerning the taxability of hypothetical prospective transactions, we find that practice should not be "chilled", by permitting premature judicial review of such non-final determinations.

In view of our holding herein, we do not reach the other contentions raised by the parties.

Accordingly, we reverse, and deny the petition and dismiss the proceeding. Concur—Sullivan, J. P., Rosenberger, Wallach and Ross, JJ.