OPINION OF THE COURT
Hancock, Jr., J.
In this appeal in a declaratory judgment action we address a preliminary legal question: whether the claim that the Landmarks Law[1] is unconstitutional as applied to plaintiff, the Church of St. Paul and St. Andrew, is ripe for judicial determination. Plaintiffs church, the attached parish house and its separate parsonage are located at West End Avenue and 86th Street in Manhattan. Because of the long-continued disrepair of the church, the expense of maintaining and heating it, and its meager financial resources, plaintiff had developed a rebuilding program which included plans for the complete reno *514 vation of the church and the construction of a commercial high-rise condominium on part of the property. Its claim stems from the designation on November 24, 1981 of its church and parish house as a landmark by the New York City Landmarks Preservation Commission.
Plaintiff does not question the facial validity of the statute. (The Landmarks Law has withstood constitutional challenge; see, Penn Cent. Transp. Co. v City of New York, 42 NY2d 324, 330, affd 438 US 104.) Rather, it contends that the Landmarks Law, as applied to it by virtue of the Commission’s designation, effects a "taking” of property without due process or just compensation and interferes with the free exercise of its religion in contravention of various provisions of the Federal and New York State Constitutions (see, US Const 1st, 5th and 14th Amends; NY Const, art I, §§ 3, 7). Plaintiff’s complaint contains the allegations which this court has recognized as necessary for a charitable organization claiming an unconstitutional application of the Landmarks Law — i.e., that the statute, as applied, physically or financially prevents or seriously interferes with the carrying out of the charitable purpose (see, Matter of Society for Ethical Culture v Spatt, 51 NY2d 449, 454-455; Lutheran Church v City of New York, 35 NY2d 121, 131; Matter of Trustees of Sailors’ Snug Harbor v Platt, 29 AD2d 376, 378).
On defendants’ motion for summary judgment, Supreme Court dismissed the declaratory judgment action as not ripe, without prejudice to appropriate proceedings after completion of the Landmarks Law’s administrative processes. The Appellate Division affirmed unanimously, without opinion (110 AD2d 1095), and we granted leave to appeal (65 NY2d 606).
For reasons stated herein we conclude, as did the courts below, that until plaintiff’s rebuilding plans are considered by the Commission pursuant to the various ameliorative provisions in the Landmarks Law, the issue presented — whether the alleged interference with plaintiff’s ability to carry out its charitable purpose amounts to a constitutional injury — is not ripe for judicial determination. The order of the Appellate Division should, therefore, be affirmed.
I
Recognizing the need for a comprehensive scheme to encourage the preservation of buildings and areas with historic or aesthetic importance, New York City adopted its Landmarks *515 Preservation Law in 1965 (see, Administrative Code of City of New York, ch 8-A, § 205-1.0 et seq.). The pertinent provisions of the law may be briefly summarized. The primary responsibility for administering the law is vested in the Commission, which must include at least three architects, one historian, one city planner or landscape architect, one realtor, and at least one resident of each of the city’s five boroughs (see, New York City Charter § 534). The Commission initially identifies properties and areas that have "a special character or special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation” (see, Administrative Code § 207-1.0 [h]). If the Commission determines, after giving all interested parties an opportunity to be heard, that a building or area satisfies the statute’s criteria, it will designate a building to be a "landmark” (§ 207-1.0 [n]), situated on a particular "landmark site” (§ 207-1.0 [o]), or will designate an area to be an "historic district” (§ 207-1.0 [h]). New York City’s Board of Estimate may then modify or disapprove the designation, and the owner may seek judicial review of the final decision.
Final designation as a landmark imposes certain restrictions and obligations upon an owner of a landmark site. First, the statute requires that the exterior features of the building be kept "in good repair” (see, § 207-10.0 [a]). Violation of the maintenance and repair requirements subjects an owner to a fine of not more than $250 and not less than $25, or to imprisonment for not more than 30 days, or both (see, § 207-16.0 [b]). Second, the owner must apply to the Commission for advance approval of any proposal to alter the exterior architectural features of the landmark or to construct any exterior improvement (see, §§ 207-4.0 — 207-9.0).
Three separate procedures are available through which an owner may apply for administrative approval to alter a landmark site. First, the owner may apply to the Commission for a "certificate of no effect on protected architectural features”, an order permitting the alteration on the ground that it will not change or affect any architectural feature of the landmark (see, § 207-5.0). Second, the owner may apply to the Commission for a certificate of "appropriateness” (see, § 207-6.0). The Commission must, with certain limited exceptions, act upon the application for such certificate within 90 days (see, § 207-7.0). It must grant the certificate if it concludes that the proposed construction on the landmark site "would be appropriate for and consistent with the effectuation of the pur *516 poses” (§ 207-6.0) of the Landmarks Law. Denial of either certificate is subject to judicial review. The third and final procedure — the so-called "hardship procedure” (certificate of appropriateness on the ground of "insufficient return”, § 207-8.0) — provides additional options, which are for the most part limited to owners of commercial sites.[2]
II
In its complaint, plaintiff does not, unlike petitioners in Ethical Culture (supra), Lutheran Church (supra) and Sailors’ Snug Harbor (supra), base its claim of injury on being compelled by the Landmarks Law to maintain and retain an unsuitable building which it wants to demolish. Here, plaintiff does not plan to replace the designated landmark. On the contrary, it proposes to renovate the church structure under a rebuilding program with a private partner, which includes a separate development for a commercial high-rise condominium.
Plaintiff alleges that its severely deteriorating church, built to seat a congregation of 1,400, is unsuitable and far too large for its current membership. Because the financial burdens of maintaining, repairing and heating the structure had become more than its small congregation could bear, plaintiff, in the years preceding the Commission’s designation on November 24, 1981, had consulted with various developers and architects for the purpose of devising a rebuilding program "to provide a new building with appropriate facilities and income for plaintiff’s continuing religious and charitable program, thereby assuring its survival.” In its complaint plaintiff asserts that the Commission made the designation over its objection for the purpose of preventing its building plan and that, as a result, it "is now prevented from altering or reconstructing its *517 church building without permission of the Commission”. In addition, plaintiff alleges that the designation subjects it to the immediate repair and maintenance requirements of the Landmarks Law (§ 207-10.0) which it cannot afford to fulfill and which, if not complied with, expose it to criminal sanctions (§ 207-16.0).
Although it alleges that the landmark designation was intended to prevent it from carrying out its renovation program, plaintiff has never applied for a certificate of appropriateness (see, § 207-6.0) or sought other approval of its plans from the Commission. Indeed, from its own formulation of the issue in its brief on appeal, it is evident that at the root of plaintiff’s claim of injury is its aversion to ceding any control of the building program to the Commission — not its concern over ultimate approval of the program by the Commission.[3]
Defendants’ answer initially included failure to exhaust administrative remedies as an affirmative defense. When they moved for summary judgment[4] defendants were permitted to substitute lack of ripeness for the defense of exhaustion of remedies. The affidavits in support of defendants’ motion centered on the Landmarks Law’s comprehensive scheme of regulatory options under which an owner can apply to the Commission for permission to alter, reconstruct or demolish a landmark site. In his affidavit, Commission chairman, Gene A. Norman, stressing the Commission’s willingness to accommodate plaintiff’s needs, stated: "If plaintiff were to submit an application for a certificate of appropriateness or a notice to proceed containing a specific proposal for the Church which meets the criteria of either appropriateness under § 207-6.0 or hardship under § 207-8.0 or the judicially-created hardship test, the Commission will grant the approval or relief as provided in the statute, which may include permission to *518 alter, reconstruct or demolish all or a portion of the designated improvement.”
Defendants also submitted affidavits of two architects describing rebuilding plans submitted to plaintiffs board of trustees in 1980 in which the exterior walls on both West End Avenue and 86th Street and the bell tower at that corner would be retained and the interior of the church rebuilt as a much smaller sanctuary. The plans included a high-rise condominium tower near the eastern portion of the site. Both architects express the belief that the Commission might approve such proposal or one similar to it which would preserve much of the existing facade and permit the erection of a commercial structure. Plaintiff has not refuted either the Commission chairman’s affidavit or the affidavit of either architect.
Ill
It is basic that a court should decline to apply the discretionary relief of declaratory judgment (CPLR 3001; James v Alderton Dock Yards, 256 NY 298) to "administrative determinations unless these arise in the context of a controversy 'ripe’ for judicial resolution” (Abbott Labs. v Gardner, 387 US 136, 148). The ripeness doctrine and the related rule that there must be "an actual controversy between genuine disputants with a stake in the outcome” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3001:3, p 356) serve the same purpose: "to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems” (4 Davis, Administrative Law § 25:1, at 350 [2d ed]). Consistent with this general purpose we dismissed a declaratory judgment action involving the constitutionality of a statute because of the possibility that the statute would be defeated in the approaching referendum and never become law, stating that "courts should not perform useless or futile acts”. (New York Public Interest Research Group v Carey, 42 NY2d 527, 530.) In Matter of New York State Inspection, Sec. & Law Enforcement Employees v Cuomo (64 NY2d 233) we restated the rule that a claim based on an injury which might never occur should be dismissed, holding that the petition of prison guards attacking plans to close a correctional facility was not ripe, because "the harm sought to be enjoined [was] contingent upon events which may not come to pass” (id., at p 240).
*519 The particular ripeness question before us arises in a declaratory judgment action where it is claimed that constitutional harm has resulted from the application of a statute by an administrative agency. In a trilogy of decisions in declaratory judgment actions brought by drug companies to review the validity of certain administrative regulations (Abbott Labs. v Gardner, 387 US 136, supra; Toilet Goods Assn. v Gardner, 387 US 158; Gardner v Toilet Goods Assn., 387 US 167), the Supreme Court used a two-part analysis for determining whether a preenforcement challenge to an administrative regulation is ripe for judicial review. It is necessary, the court stated, "first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied” (387 US, at p 162; see, 4 Davis, op. cit. § 25:6, at 368, 369). We find this two-part analysis apt and particularly helpful in resolving the question here.
The "appropriateness” inquiry looks to whether the administrative action being reviewed is final and whether the controversy may be determined as a "purely legal” question (see, Abbott Labs. v Gardner, supra, at p 149; Toilet Goods Assn. v Gardner, supra, at p 163). The concept of finality requires an examination of the completeness of the administrative action and a pragmatic evaluation of whether the "decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury” (Williamson County Regional Planning Commn. v Hamilton Bank, 473 US —, 105 S Ct 3108, 3120; see, Abbott Labs. v Gardner, supra, at pp 150-152; Toilet Goods Assn. v Gardner, 387 US, at pp 162, 163; United States v Storer Broadcasting Co., 351 US 192, 198; 4 Davis, op. cit. § 25:6, at 369). In New York Stock Exch. v Bloom (562 F2d 736), for example, the Circuit Court for the District of Columbia found that the position taken by the Comptroller in certain opinion letters was not final and not appropriate for judicial review under the Abbott Labs. analysis because the opinions were tentative in nature and subject to change (id., at p 741). Even if an administrative action is final, however, it will still be "inappropriate” for judicial review and, hence, unripe, if the determination of the legal controversy involves the resolution of factual issues (see, New York Stock Exch. v Bloom, supra, at p 741) or consideration of extraneous problems or factors beyond the legal question presented (see, Toilet Goods Assn. v Gardner, supra, at p 163; see also, Babbitt v Farm Workers, 442 US 289, 303-304, where issue of validity of *520 access provision of a farm labor statute was not appropriate for judicial determination since it called for consideration of factors yet unknown).
The second part of the inquiry requires an evaluation of "the hardship to the parties of withholding [or granting] court consideration” (Abbott Labs. v Gardner, supra, at p 149). The effect on the administrative agency and its program and the need for judicial economy should be taken into account as well as the degree of hardship to the challenging party (4 Davis, op. cit. § 25:6, at 369). Essentially, this inquiry, from the standpoint of the challenging party, entails an examination of the certainty and effect of the harm claimed to be caused by the administrative action: whether it is "sufficiently direct and immediate” (Abbott Labs. v Gardner, supra, at p 152) and whether the action’s "effects [have been] felt in a concrete way” (id., at p 148). If the anticipated harm is insignificant, remote or contingent (see, Matter of New York State Inspection, Sec. & Law Enforcement Employees v Cuomo, 64 NY2d, at p 240, supra) the controversy is not ripe.
A fortiori, the controversy cannot be ripe if the claimed harm may be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party. Recent decisions of the Supreme Court illustrate this rule. (See, Williamson County Regional Planning Commn. v Hamilton Bank, supra; Hodel v Virginia Surface Min. & Reclamation Assn., 452 US 264; Agins v Tiburon, 447 US 255.) In Williamson County Regional Planning Commn. (supra), for example, the court held that the plaintiffs claim that zoning laws had effected a taking of its property was not ripe because plaintiff had not sought variances which would have allowed it to develop the property; and in Hodel v Virginia Surface Min. & Reclamation Assn. (supra), the court rejected as premature plaintiffs claim that a Federal mining control statute was unconstitutional, stating: "If [the property owners] were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions. The potential for such administrative solutions confirms the conclusion that the taking issue decided by the District Court simply is not ripe for judicial resolution” (452 US, at p 297 [emphasis added, n omitted]). Similarly, in Toney v Reagan (467 F2d 953, 956-957, cert denied sub nom. Mabey v Reagan 409 US 1130), the court held that the complaint of college professors allegedly threat *521 ened with discharge for advocating various causes and protesting the Viet Nam War should not be heard on the merits because plaintiffs had not attempted to avert the discharge through the administrative remedies at hand.
The ripeness requirement that a plaintiff must make use of available administrative means to forestall the alleged harm should not be confused with the requirement that administrative remedies must be exhausted before an action may be judicially reviewed (see, Williamson County Regional Planning Commn. v Hamilton Bank, 473 US, at p —, 105 S Ct, at p 3120, supra).[5] Ripeness pertains to the administrative action which produces the alleged harm to plaintiff; the focus of the inquiry is on the finality and effect of the challenged action and whether harm from it might be prevented or cured by administrative means available to the plaintiff. The focus of the "exhaustion” requirement, on the other hand, is not on the challenged action itself, but on whether administrative procedures are available to review that action and whether those procedures have been exhausted (see, Williamson County Regional Planning Commn. v Hamilton Bank, 473 US, at p —, 105 S Ct, at p 3120, supra).
IV
We turn to whether plaintiff’s claim of constitutional harm is ripe. Plaintiff, we must repeat, does not directly challenge or seek to review the Commission’s act of designating its property as a landmark. The claim is that the Landmarks Law, as made applicable to plaintiff by virtue of the designation, is unconstitutional because of the effect of that statute in obstructing or interfering with plaintiff’s rebuilding program and subjecting plaintiff to immediate repair and *522 maintenance requirements which carry criminal sanctions. For several reasons, the controversy is not ripe.
Under the first Abbott Labs, inquiry, we find that the issue presented is not "appropriate” for judicial review. Neither the finality requirement nor the requirement that the issue be "purely legal” is met. Finality is lacking because the effect on plaintiff of being subjected to the Landmarks Law — the basis of its claim — is incomplete and undetermined. The effect cannot be measured until plaintiff has sought and the Commission has granted or denied a certificate of appropriateness (Administrative Code § 207-6.0) or other approval of its rebuilding program. Until the Commission acts, it simply cannot be said that the administrative agency has taken a definitive position "that inflicts an actual, concrete injury” (Williamson County Regional Planning Commn. v Hamilton Bank, supra, at p —, at p 3120).
Likewise, it is clear that the requirement that the issue presented be "purely legal” is not satisfied. Plaintiff does not present the legal question of whether the Landmarks Law is invalid facially. The question is whether it is invalid in its particular application. The ultimate resolution of this constitutional issue — i.e., whether the Landmarks Law, as applied, prevents or seriously interferes with plaintiff’s ability to carry out its charitable purpose (Matter of Society for Ethical Culture v Spatt, 51 NY2d 449, 454, 455, supra) — will require a careful examination of facts not yet developed pertaining to plaintiff’s financial situation and to whatever action the Commission takes with respect to plaintiff’s rebuilding program.
Neither does plaintiff make the second showing required under Abbott Labs.: that the impact of the administrative action be "direct and immediate” (Abbott Labs. v Gardner, 387 US, at p 152, supra) and "felt in a concrete way” (id., at p 148). Indeed, as yet, there can be no such harm for there has been no interference. (Compare, Matter of Society for Ethical Culture v Spatt, supra; Lutheran Church v City of New York, supra; and Matter of Trustees of Sailors’ Snug Harbor v Platt, supra, where the owners claimed immediate and irremediable injury from being forced to maintain outmoded and costly landmarked buildings which they sought to replace.) How much, if any, of plaintiff’s rebuilding program will be thwarted and whether and to what extent it will suffer resultant constitutional harm cannot be known until the Commission acts on plaintiffs request for approval of its *523 plans. Nor can plaintiff claim direct and immediate harm from the imposition of the Landmarks Law’s repair and maintenance requirements. The plans, which it refuses to submit to the Commission for approval, include renovation of the interior and exterior of the church and would, if approved, result in compliance with the very statutory requirements plaintiff contends the Commission’s designation causes it to violate.
Finally, plaintiff’s declaratory judgment action cannot be ripe to the extent that it is based on plaintiff’s claim of constitutional injury from being theoretically subject to criminal sanctions for noncompliance with the Landmarks Law’s repair and maintenance requirements (see, Landmarks Law §§ 207-10.0, 207-16.0). Plaintiff does not allege that these requirements have been enforced, and nothing in the record suggests that imposition of criminal sanctions has been threatened or even intimated. Moreover, as noted, plaintiff’s claim will require a resolution of factual issues. Where, as here, a claim of unconstitutional application of a criminal statute involves factual as well as legal questions, we have held that it should be determined within the criminal proceeding itself (see, Kelly’s Rental v City of New York, 44 NY2d 700, 702; New York Foreign Trade Zone Operators v State Liq. Auth., 285 NY 272; Reed v Littleton, 275 NY 150; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3001.06k [1985]).
We conclude, then, that regardless of the theory on which plaintiff proceeds, its constitutional claim does not present an issue that is ripe for judicial determination.
V
The question remains whether our decision on the ripeness issue should be different because plaintiff is a church and bases its constitutional claim in part on prospective interference with its right of free exercise of religion (see, US Const 1st Amend; NY Const, art I, § 3). We think not.
We recognize that religious institutions "enjoy a constitutionally protected status which severely curtails the permissible extent of governmental regulation in the name of the police powers” (Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 496) and that courts have declined to enforce zoning ordinances, for example, where the restrictions, if enforced, would prohibit or directly impinge upon religious uses (see, Jewish Reconstructionist Synagogue v Incorporated *524 Vil. of Roslyn Harbor, 38 NY2d 283, 287-289; Matter of Westchester Reform Temple v Brown, 22 NY2d 488, 493, 496, supra; Matter of Diocese of Rochester v Planning Bd., 1 NY2d 508). But no such direct impingement is involved. The ultimate effect, if any, on plaintiff’s religious activities will be not direct, but purely consequential and, moreover, contingent on future developments. In any event, the merits of the constitutional claim are not before us.[6]
Irrespective of plaintiff’s status as a church, the ultimate determination of the constitutional issue must depend on future developments and particularly on what action the Commission takes with respect to plaintiff’s renovation plans. (Compare, Babbitt v Farm Workers, 442 US 289, 301-302, supra, and Epperson v Arkansas, 393 US 97, where statutes were attacked facially for unlawfully restricting speech [Babbitt] and as violative of the establishment clause [Epperson]) What plaintiff must prove to establish its constitutional claim as a charity under the established standard (see, Matter of Society for Ethical Culture v Spatt, 51 NY2d 449, 455, supra)[7] is neither dependent upon nor peculiar to its religious character. Plaintiff’s claim — founded on alleged interference with its building program and its inability to afford the repair requirements of the Landmarks Law — takes on incidental First Amendment overtones only because it is a church. That fact is simply not germane to the ripeness issue here.[8] *525 In sum, unless a special exception to the ripeness doctrine is to be created, plaintiffs status as a religious organization has no relevance. Because we find no justification for such exception, we conclude that the issue presented is not ripe for judicial determination and that it was a proper exercise of discretion to dismiss the declaratory judgment action without prejudice to being renewed after the Commission has acted on plaintiffs application for a certificate of appropriateness (Landmarks Law § 207-6.0) or for other ameliorative relief. That disposition, we believe, will promote judicial economy and spare the parties a potentially lengthy and expensive round of litigation which could turn out to be unnecessary. It will also further the purpose of the Landmarks Law and promote the interest of the public and the Commission by avoiding unnecessary delay in preserving a deteriorating building of unquestioned architectural significance. The order of the Appellate Division should be affirmed, with costs.

. The New York City Landmarks Preservation Law (Administrative Code of City of New York, ch 8-A, § 205-1.0 et seq.) is referred to as the Landmarks Law. The agency which administers the Landmarks Law is the New York City Landmarks Preservation Commission (referred to herein as the Commission) established pursuant to New York City Charter § 534. In addition to the individual members of the Commission, the members of the Board of Estimate of the City of New York and the City of New York are included as defendants.
The Commission designated plaintiffs church a landmark on November 24, 1981, noting that it is a "brilliant exemplar of the eclecticism that spread through American architecture in the late 19th century” representing a fusion of Early Christian, German Romanesque and Italian Renaissance styles. The New York City Board of Estimate approved the designation on March 18, 1982. Plaintiff does not challenge the landmark designation per se. Five days after the Board of Estimate’s approval of the designation, plaintiff commenced the instant action pursuant to 42 USC § 1983 (Civil Rights Law) and CPLR 3001 seeking a declaration that the Landmarks Law was unconstitutional as applied to it, an injunction and damages.

. The procedure under Administrative Code § 207-8.0 (a) (2) — available only to owners of tax-exempt properties who can satisfy four preconditions— is not applicable here. The Commission argues that, where a tax-exempt owner of a landmark site is unable to meet the preconditions, it may nevertheless make a preliminary finding of insufficient return applying the so-called judicial hardship test set forth in Matter of Trustees of Sailors’ Snug Harbor v Platt (29 AD2d 376, 378) and subsequently adopted by this court in Lutheran Church v City of New York (35 NY2d 121, 131), and Matter of Society for Ethical Culture v Spatt (51 NY2d 449, 454-455). Because plaintiff has never sought initial Commission approval of its rebuilding program by applying for a certificate of appropriateness (see, § 207-6.0), we do not consider the issue, discussed at some length in the dissent (dissenting opn, at pp 534-535), whether the Commission has this power.

. Plaintiff frames the central issue in its brief as follows: "The dispute in this case is not whether this decaying church structure is architecturally significant. Instead, the dispute is whether — after appellant has shown that its extreme financial and physical hardship blocks its fulfillment of its religious and charitable purposes — the Church must then surrender control over rebuilding to the Landmarks Preservation Commission in order for the Church to survive — in effect, to buy its survival by giving over to the Commission control of the new structure. ” (Appellant’s brief, at 7 [emphasis added].)

. Defendant sought summary judgment upon the ground that plaintiff’s complaint did not state a cause of action and that no triable issues of fact were presented, as well as on the ground of ripeness. Supreme Court treated only the latter issue and did not discuss the merits of plaintiff’s complaint.

. Because defendants are asserting lack of ripeness as a defense — not failure to exhaust administrative remedies — we need not address plaintiff’s argument concerning the applicability of the exhaustion defense to an action brought under 42 USC § 1983 (see, Patsy v Florida Bd. of Regents, 457 US 496). See also, Toney v Regan (467 F2d 953), in which the court, in holding that "prospective, as distinguished from retrospective, state administrative remedies” need not be exhausted in an action under the Federal Civil Rights Law, noted that the "grievance procedures in this case would not operate to rectify a wrong which had already occurred. Rather, they were a means of forestalling a threatened deprivation of rights which was not to transpire for several months. In the event that appellants were to utilize the state hearing procedures, they might successfully reverse the decision not to reemploy them, have their contracts renewed, and suffer no break in their employment” (467 F2d 953, 956 [emphasis added]).

. We note that, once a claim is ripe for judicial review, the test for proving a constitutional claim originally articulated in Sailors’ Snug Harbor applies. Regardless of whether a religious institution or a charitable organization is involved the test is the same. The plaintiff must show that maintenance of the landmark either physically or financially prevents or seriously interferes with carrying out the charitable purpose (see, Matter of Society for Ethical Culture v Spatt, 51 NY2d 449, 455; Lutheran Church v City of New York, 35 NY2d 121, 131; Matter of Trustees of Sailors’ Snug Harbor v Platt, 29 AD2d 376, 378). We note also that, although Lutheran Church involves a claim of unconstitutionality of the Landmarks Law by a religious organization, the opinion does not refer to the First Amendment.

. The test originally articulated in Sailors’ Snug Harbor is as follows: "The criterion for commercial property is where the continuance of the landmark prevents the owner from obtaining an adequate return. A comparable test for a charity would be where maintenance of the landmark either physically or financially prevents or seriously interferes with carrying out the charitable purpose” (29 AD2d 376, 378 [emphasis added]).

. We have found no case dealing with the precise issue presented: whether the ripeness doctrine should be applied differently because the complaint involves a First Amendment violation. We note, however, that the complaint of unlawful discharge of the college professors in Toney v *525 Reagan (467 F2d 953, cert denied sub nom. Mabey v Reagan, 409 US 1130 [see, n 5, supra]), was based squarely on the alleged violation of their rights of free speech under the First Amendment. In holding that the controversy was not ripe for adjudication because of plaintiffs’ failure to utilize prospective administrative remedies to avert their discharge, the court did not discuss the First Amendment consideration or suggest that it had any relevance to its decision. Nothing in our holding on ripeness in People ex rel. Arcara v Cloud Books (65 NY2d 324), is contrary to our holding here. Arcara entailed legal questions concerning the District Attorney’s interpretation of the statute as applied to a bookstore and whether, if so applied, the statute was unconstitutional as permitting a prior restraint. Unlike the case before us, the resolution of these issues did not involve factual questions. Moreover, the effect of the statute on the bookstore and its customers was direct and immediate because "the District Attorney [was] actually seeking to obtain the very result [i.e., the actual closure of the store] which defendant assert[ed] would be unconstitutional” (65 NY2d, at p 328, n 3).