In the Matter of COMMITTEE TO SAVE THE BEACON THEATER, by its Chairman, DANIEL B. MELTZER, et al., Respondents, v CITY OF NEW YORK et al., Appellants.

COMMITTEE TO SAVE THE BEACON THEATER, by its Chairman, DANIEL B. MELTZER, et al, Respondents, v BEACON BROADWAY COMPANY et al., Appellants.

First Department, May 9, 1989

### APPEARANCES OF COUNSEL

*Jean M. McCarroll* of counsel *(Robert S. Davis* and *Jeffrey B. Gracer* on the brief; *Berle, Kass & Case,* attorneys), for petitioners-respondents and plaintiffs-respondents.

*Elizabeth Dvorkin* of counsel *(Edward F. X. Hart* and *Phyllis Arnold* on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for municipal appellants.

*Jeffrey L. Braun* of counsel *(Michael T. Sillerman* and *Steven Graff Levine* on the brief; *Rosenman & Colin,* attorneys), for Babylon Limited Partnership, appellants.

*Jeffrey R. Metz* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* and *Marino, Chambers & Lou, P. C.,* attorneys), for Beacon Broadway, appellant.

### OPINION OF THE COURT

SMITH, J.

The central question raised by this appeal is whether the July 15, 1986 vote by the Landmarks Preservation Commission, (Landmarks Commission) or its October 3, 1986 letter entitled "Notice of Approval", indicating its approval of certain alterations to the interior of the Beacon Theater, subject to stated conditions precedent, constitutes a reviewable "final determination" within the meaning of CPLR 7801, making the issues raised by the petition "ripe" for judicial review.

In December of 1979, the Landmarks Commission, pursuant to Administrative Code of the City of New York § 25-303 (a), designated portions of the interior of the Beacon Theater, located at 2124-34 Broadway, New York City, as a landmark. In doing so the Commission stated: "the interior of the Beacon Theater survives as one of the great movie palaces of New York * * * it is a lavish space * * * designed * * * to create an exciting theatrical experience * * * and * * * through its design the interior * * * offers a sense of the fantasy and drama of the theater."

The theater had not been used as a movie palace for sometime prior to 1979 and in recent years has been used primarily for rock and roll concerts.

On or about February 6, 1986, the owner of the theater, respondent Beacon Broadway Company and its net lessee, Babylon Enterprises, Inc. (the Babylon Group) filed an application with the Landmarks Commission for a certificate of appropriateness (Certificate) pursuant to the Administrative Code § 25-309 (formerly § 207-8.0). The Babylon Group sought permission to put a cabaret and discotheque, including a dance floor, bar, restaurant, and kitchen area, in the theater.

The proposed alterations were to include the removal of seats from the orchestra area and from a balcony. Certain landmark protected lighting fixtures also were to be removed and along with the seats stored in a warehouse for future restoration. Mechanical, electrical and lighting systems were to be permanently upgraded. A nonpermanent, free-standing dance floor with a mechanical supporting superstructure for a network of cables, a sprinkler system, lights and loud speakers, were to be constructed. On the second and third floors a kitchen and pantry were to be added and on a balcony, restaurant tables and chairs. Finally, the Babylon Group planned to establish an escrow fund which would allow for restoration of the theater at the end of its seven-year lease.

The application aroused intense public interest. Hundreds of letters were received by the Landmarks Commission both in support of and in opposition to approval. The Landmarks Commission considered testimony by architects, engineers, acoustical consultants, heating, ventilation and air-conditioning specialists, a scenic designer, architectural historian, and representatives of various preservationist groups.

At a public executive session held on July 15, 1986 the Commission voted to grant a certificate provided that certain conditions were satisfied by the applicants and on October 3, 1986 the Commission issued a notice of approval letter. The letter states in bold capital letters "THIS IS NOT A PERMIT". The letter goes on to advise the applicants that the Landmarks Commission has voted to grant a certificate but that approval is subject to a number of conditions which provisions "must be met in order to further assure the continued preversation [sic] of the landmark". These provisions include the following: submission of a survey detailing which portions of the structure are to be removed and which are to be incorporated into the design and the address of the warehouse in which the removed portions are to be placed; development by the applicant, in conjunction with the Commission's staff, of a detailed plan for the new installations which minimizes the adverse impact on the theater's interior; approval of detailed construction drawings and work outline; submission of a declaration establishing an escrow account, together with a letter of credit or evidence of other appropriate commitment of funds needed to restore the theater at the end of the three-year approval period, and establishment of an ongoing monitoring and inspection program during the cabaret's period of operation. The notice of approval closed by stating: "At such times as a set of construction drawings outlining all work and details, as well as all other provisos contained herewith are in place, a Certificate of Appropriateness will be issued in conformance with the action taken by the Commission. No work described in this letter is authorized to proceed prior to the issuance of a Certificate of Appropriateness."

Thereafter, the Committee to Save the Beacon Theater (the Committee), a staunch opponent of the proposed alterations, commenced the instant proceeding pursuant to CPLR article 78. The petition alleged that the Commission's approval, as evidenced by the notice of approval, was arbitrary and capricious because the proposed alterations would damage the interior of the Beacon, that the proposed uses were improper, that the Commission held Babylon to a lower standard of appropriateness because of the temporary nature of its proposed alterations (Administrative Code § 25-307 et seq., formerly § 207-6.0 et seq.), and that no environmental review had occurred. (New York State Environment Quality Review Act; New York City Executive Order No. 91.)

The owner of the theater, the lessee corporation and the

City of New York, on behalf of itself and the Landmarks Commission, each answered the petition, the city arguing, *inter alia,* that the petition should be dismissed as premature since no certificate of appropriateness had been issued. In this regard an affidavit by the Commission's chairperson, Gene Norman, was submitted in which he stated that a certificate of appropriateness could not be issued until detailed construction drawings which accurately reflect the proposal had been submitted. He further indicated that the intermediate step of writing notice of approval letters was instituted by the Commission in part to accommodate applicants who "were reluctant understandably to expend the substantial sums necessary to have construction drawings prepared for submission with a permit application without some indication from the Commission that they were not pursuing a design that had no chance of approval." The chairperson noted that the need to review detailed construction drawings was especially strong in this case "given the nature of some of the unresolved details", design revisions in the proposal and conditions which had been established by the Commission.

However, the lessee's architect Charles Pratt, a former member of the Landmarks Commission, in an affidavit described the Commission's July 8, 1986 vote as a final determination, noting that Administrative Code § 25-308 requires that the Commission resolve an application for a Certificate within 90 days and that the agency considers its 90 days to run from the time a request for a Certificate is filed until the Commission votes. In response to the Pratt affidavit, the Commission's chairperson submitted a second affidavit in which he stated that where an applicant has failed to satisfy the conditions set forth in a notice of approval, the Commission could vote to deny the Certificate and hence, the notice cannot be considered a final determination.

The Committee also commenced an action against the owners and lessee of the Beacon Theater seeking an order barring alteration of the theater. The Babylon Group moved to dismiss that action and petitioners cross-moved to consolidate that action with their article 78 proceeding.

By the order appealed from, entered December 22, 1987, the IAS court consolidated the proceedings, adjudged the decision to grant a certificate of appropriateness to be arbitrary and capricious, granted the article 78 petition, enjoined the Commission from issuing a Certificate and enjoined the Babylon

Group from proceeding with any alterations to the interior of the theater.

The instant appeal followed.

CPLR 7801 (1) provides that an article 78 proceeding "shall not be used to challenge a determination * * * which is not final".

With respect to the CPLR 7801 (1) requirement, the IAS court found the controversy to be ripe under "the particular circumstances present here" including "the great amounts of money that have already been spent on the project", the precarious financial position of the Babylon Group and the fact that it was apparent that all the conditions in the notice of approval letter could be met, the grant of a Certificate being merely a ministerial act.* Therefore, the court concluded that "in view of the terrible cost in time and money" the proceeding was timely.

The City of New York argues on appeal that since the certificate of appropriateness had not been issued at the time of the article 78 proceeding, the proceeding was premature. The notice makes clear that it does not constitute a permit and that conditions must be satisfied before the Certificate would be issued. The city's brief represents that the notice will not be accepted by the Department of Buildings as evidence of Commission approval, which approval is necessary for the issuance of a building permit. (Administrative Code § 25-305.)

The Babylon Group argues, however, that the Commission's vote is the determinative feature of the process inasmuch as the determination as to whether the conditions have been met will be made by the Commission's staff, the Commission members will not reconvene to consider the matter again and the date of voting, not the date of issuance of the Certificate, is the actual terminus for the 90-day period within which the Commission must act. (Administrative Code § 25-308.)

■ Both arguments purport to rely on *Church of St. Paul & St. Andrew v Barwick* (67 NY2d 510 [1986], *cert denied* 479 US 985 [1986]). A reading of that case leads to the conclusion that the matter here would not be ripe until issuance of a certificate of appropriateness by the Commission. The Court of Appeals in *Church of St. Paul & St. Andrew* utilized a two-

---

* Decision of Honorable Jacqueline W. Silbermann dated September 22, 1987.

part analysis for determining whether a request for declaratory judgment that the New York City Landmarks Preservation Law was unconstitutional, as applied to the plaintiff, was ripe for judicial determination. That analysis required the court, first, to determine whether the issues presented are " 'appropriate for judicial resolution' " and second, to " 'assess the hardship to the parties if judicial relief is denied' ". *(Supra,* 67 NY2d, at 519.)

The "appropriateness" inquiry looks to whether the administrative action is final, that is, whether the agency has arrived at a " 'definitive position' " on the issue inflicting " 'an actual, concrete injury' " or whether the action relies on factors as yet unknown. *(Supra,* 67 NY2d, at 519.)

The second portion of the inquiry requires an evaluation of whether withholding (or granting) judicial review will result in hardship to either of the parties, as well as its potential effect on the agency and its program. "Essentially, this inquiry, from the standpoint of the challenging party, entails an examination of the certainty and effect of the harm claimed to be caused by the administrative action: whether it is 'sufficiently direct and immediate' * * *. If the anticipated harm is insignificant, remote or contingent * * * the controversy is not ripe. A fortiori, the controversy cannot be ripe if the claimed harm may be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." *(Supra,* 67 NY2d, at 520.)

In *Church of St. Paul & St. Andrew,* the Court of Appeals found judicial review to be inappropriate since the effect on the plaintiff church of being subjected to the Landmarks Law was undetermined and could not be measured until it sought and was "granted or denied a certificate of appropriateness (Administrative Code § 207-6.0) or other approval of its rebuilding program." *(Supra,* 67 NY2d, at 522.)

Applying the standard utilized in *Church of St. Paul & St. Andrew (supra)* to the instant case, the conclusion is warranted that in the absence of the issuance of a certificate of appropriateness, finality is lacking. Nor does the notice of approval constitute such "other approval" as contemplated by *Church of St. Paul & St. Andrew* due to the conditions attendant upon such notice, satisfaction of which must precede eventual issuance of the Certificate. Such conditions include the furnishing of detailed drawings, creation of an

escrow account and creation of a monitoring and inspection program. Viewed pragmatically, no entitlement to the Certificate rests with the applicant until such conditions have been met. The satisfaction of these conditions is not merely ministerial. It is likely to require further negotiations with the Commission and/or its staff. The conclusion that such further negotiable steps undermine the finality of the notice is supported by the Court of Appeals holdings in *Matter of Patrick v Perales* (67 NY2d 731, 734 [1986] [application for adoption subsidy not finally denied where more information sought]) and *Matter of Martin v Ronan* (44 NY2d 374, 381 [1978] [candidates not aggrieved by a tentative eligible list which was subject to revision]).

Moreover, consideration of whether a determination by the Commission that the interior of the Beacon would be unharmed by the proposed changes and of the feasibility of restoration, of necessity, would require consideration of both the requested monitoring and inspection program, as well as the size and nature of the restoration fund. Both the monitoring and inspection plan and restoration declaration have yet to be received by the Commission.

Finally and perhaps most significantly, the notice of approval had neither a "direct" or "immediate" impact upon the parties. As to the respondent applicants, the ultimate issuance of a Certificate is dependent upon their own performance. In making its application, the Babylon Group assumed any adverse financial risks should the Commission ultimately deny issuance of the Certificate. As to the petitioning Committee, it was not aggrieved since work could not be commenced until issuance of the Certificate and the grant of a building permit. Should the applicants fail to satisfy the conditions of the notice of approval, the Certificate may never be issued.

"[T]he policy underlying the dismissal for prematurity of article 78 proceedings before a final and binding determination is to preclude the initiation of litigation that may thereafter become academic." *(Matter of Samuel v Ortiz,* 105 AD2d 624, 626 [1st Dept 1984].) That policy prompts dismissal of the proceeding herein.

Finding as we do that the issues raised by the petition are not ripe for judicial review, this court need not reach the merits of the petition. However, were this court to reach the merits it would conclude that the IAS court erred in finding that the determination of the Commission was arbitrary and capricious.

In reviewing actions by the Landmarks Commission, a court's review is limited to whether the Commission's determination has a " 'rational basis' ". *(Matter of Society for Ethical Culture v Spatt,* 68 AD2d 112, 116 [1st Dept 1979], *affd* 51 NY2d 449, 453 [1980]; *see also, Matter of Mid-State Mgt. Corp. v New York City Conciliation & Appeals Bd.,* 112 AD2d 72 [1st Dept 1985], *affd* 66 NY2d 1032 [1985].) The Commission is a body of historical and architectural experts to whom deference should have been given on the basis of this record *(see,* NY City Charter § 534; *Morley v Arricale,* 66 NY2d 665 [1985]), since these specialists were acting within their field of expertise. *(Matter of Warder v Board of Regents,* 53 NY2d 186, 194 [1981], *cert denied* 454 US 1125 [1981].)

The IAS court correctly noted that the theater's landmark designation rested not so much on its individual elements as on the effect of the interior of the theater as a whole. However, the Commission seems reasonably to have reached the conclusion that although certain factors will be shielded from view by nonpermanent fixtures, they also will be shielded from harm. Its preliminary decision to grant the Certificate, taking into account its finding that the purpose of the landmark designation would be accommodated by the proposed alteration (the protection, preservation, enhancement, perpetuation and use of the landmark, Administrative Code §§ 25-303, 25-307 [a], [e]), does not appear to have been irrational.

The Commission's extensive and detailed findings addressed such matters as: whether the proposed sound system would disturb the theater's plaster ornamentation; disruption of floor slab by major drilling; installation of vibration absorbing and acoustical padding; the covering of walls in the proposed kitchen area with protective sheathing; the design of an exhaust system capable of extracting 99% of any grease buildup; elimination of potential damage caused by cigarette smoke by installation of an appropriate heating, ventilation and air-conditioning system, and permanent upgrading of the electrical and wiring system without physical damage to the theater's features.

The Commission considered the question of the Beacon's value as a theater and not just for its individual elements and determined that since the Beacon would still occasionally be used as a theater and that since the alterations were nonpermanent, the purposes of the designation were accommodated. While it appears that many of the Commission's members, as

did the IAS Judge, lamented the proposed change in use, it cannot be said that the actions of the Commission in granting preliminary approval of such change was arbitrary and capricious and an abuse of discretion. *(Matter of Pell v Board of Educ.,* 34 NY2d 222 [1974].)

Accordingly, judgment of the Supreme Court, New York County (Jacqueline Silbermann, J.), entered December 22, 1987, granting a petition by the Committee to Save the Beacon Theater to enjoin and declare invalid the proposed issuance of a certificate of appropriateness by the New York City Landmarks Preservation Commission for alterations to the landmark designated interior of the Beacon Theater, should be reversed, on the law, and the petition dismissed, without costs.

KUPFERMAN, J. P., ROSS, ASCH and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 22, 1987, unanimously reversed, on the law, without costs and without disbursements, and the petition dismissed.