In the Matter of JAMAICA WATER SUPPLY COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, November 16, 1989

APPEARANCES OF COUNSEL

*Read & Laniado (Kevin R. Brocks* and *Howard J. Read* of counsel), for petitioner.

*Robert A. Simpson (Kathryn C. Brown* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

Utility customers may file complaints relating to water service with respondent, Public Service Commission, whenever they believe that the utility did not resolve their problem satisfactorily (16 NYCRR 12.1 [a]). Respondent notifies the utility of these complaints, and maintains a record of them which it uses to pinpoint potential service problems, billing errors, deposit requests, deferred payment plans and other utility-related concerns *(see,* 16 NYCRR 12.1 [a], [c]; 12.2 [a]).

Petitioner is a private corporation servicing approximately 118,000 customers in both Queens and Nassau Counties. In 1985, respondent expressed concern with what it perceived to be petitioner's unusually large number of consumer complaints, and cautioned the utility to reduce its complaint rate to at least 50 complaints per 100,000 customers. In a 1986 rate case, respondent again indicated that petitioner's customer relations were less than satisfactory and, in its March 1987 opinion, warned that unless petitioner showed substantial progress in meeting the previously established complaint rate goal, respondent would consider such revenue adjustments as might be warranted in the next rate case. In anticipation of that rate hearing, respondent directed its staff to develop adjustment proposals which could be implemented if petitioner did not meet the customer complaint goal.

In April 1987, petitioner filed proposed revised tariff leaves designed to generate increased annual revenues. In the course of the hearings which followed, respondent's staff suggested that petitioner's rate of return and its executives' salaries be reduced automatically if its average complaint rate for a six month period exceeded 50 complaints per 100,000 customers. Even though petitioner's complaint rate had been at a record low for the previous three months, staff urged adoption of it adjustment proposal to provide incentive for petitioner to continue its improvement efforts in this area.

The Administrative Law Judge recommended rejecting th

staff's proposal because respondent's concern had produced the desired results, substantial progress had occurred and there was no evidence to suggest that this progress in complaint rate reduction below target would not continue. It was also observed "that many complaints are the result of considerations other than poor service". Respondent found the concepts underlying the staff's proposal sound, but feared that potential disputes might arise concerning what complaints should be counted, and that an automatically triggered adjustment might expose the company to such an unreasonable risk that its legitimate cost of service would go unrecovered. Therefore, respondent adopted a procedure such that when the complaint rate exceeded 40 complaints per 100,000 customers averaged over a six-month period, petitioner would be required to show cause at a hearing why financial penalties such as those staff proposed should not be implemented. Respondent based its complaint rate trigger at 40 because petitioner had already succeeded in reducing its rate well below that figure, and it believed that even 40 complaints was a large number.

In response to petitioner's rehearing petition, respondent noted that petitioner's not insignificant concerns that a group of customers could artificially increase the number of complaints, or that complaints which had no bearing on the quality of service petitioner supplied might be unfairly counted in the tally, could be addressed at the show cause hearing; these very uncertainties had prompted respondent to provide the hearing procedure rather than the automatic penalty recommended by the staff.

Thereafter, petitioner commenced this CPLR article 78 proceeding. It denies that any relationship exists between customer complaints and service quality, contends that respondent arbitrarily and capriciously selected a complaint number to trigger the penalty mechanism and, further, believes that this procedure will result in a confiscation of its property.

Inasmuch as no show cause hearing has yet been held and no adjustment yet made, this controversy is not yet ripe for review (see, Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, cert denied 479 US 985; see also, CPLR 7801 [1]). A two-step analysis must be undertaken to determine when agency action is reviewable. First, it must appear the issues tendered are appropriate for judicial resolution and, second, that the hardship which the parties may suffer if the court

withholds consideration must be minimal *(Church of St. Paul & St. Andrew v Barwick, supra,* at 519).

The "appropriateness inquiry" requires analysis of the completeness of the administrative action taken by the agency to determine whether the agency's position on the issue is definitive and inflicts actual and concrete injury, or whether the agency's action, despite being final, awaits consideration of extraneous factors as yet unknown *(supra,* at 519-520; *Matter of Committee to Save Beacon Theater v City of New York,* 146 AD2d 397, 403). Applying this standard, adoption of the hearing mechanism employed by respondent cannot be said to be final agency action which leaves nothing more than a purely legal question to resolve, for it has no measurable impact upon petitioner *(see, Matter of Cabrini Med. Center v Axelrod,* 107 AD2d 965, 966; *see also, Matter of Committee to Save Beacon Theater v City of New York, supra,* at 404). In essence, petitioner does not challenge an administrative action that will certainly and immediately adversely affect it, but rather attempts to prevent a speculative harm from occurring *(see, Matter of Parent Teacher Assn. v Board of Educ.,* 138 AD2d 108, 112). And, petitioner's assertion in its petition that respondent's hearing procedure injures it because its rates and officers' allowance for salaries *"may* be reduced in some unspecified way if customer complaints * * * exceed a certain arbitrary number" (emphasis supplied) is too speculative to constitute "direct" or "immediate" injury *(see, Matter of Committee to Save Beacon Theater v City of New York, supra; see also, Petosa v City of New York,* 135 AD2d 800, 802, *lv denied* 71 NY2d 807). Only if respondent actually holds the hearing, and adjusts petitioner's rate of return or its officers' salaries may the effect of respondent's determination to impose a 40-complaint threshold actually be measured. And even then, the adjustments would be reviewable under respondent's mandatory rehearing procedure (Public Service Law § 22).

The second step in the ripeness analysis considers the effect on petitioner and respondent if judicial review is denied. "If the anticipated harm is insignificant, remote or contingent * * * [or] if the claimed harm may be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" the controversy is not ripe for review *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 520, *supra).* Ultimately, petitioner's own performance will determine whether respondent ever holds a show cause hearing. The threatened action conceiv-

ably may never be implemented, either because petitioner does not reach the specified threshold, respondent simply chooses to take less drastic action or because it achieves an amicable solution. When and if such a hearing is held and the adjustments are made, at that point the controversy will be ripe and suitable for judicial review.

KANE, J. P., MIKOLL, MERCURE and HARVEY, JJ., concur.

Petition dismissed, without costs.