■ ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant, v CAPRI CONSTRUCTION CORP. et al., Respondents and Third-Party Plaintiffs, et al., Third-Party Defendant.—Order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered November 7, 1988, which denied plaintiff's motion for summary judgment, unanimously reversed, on the law, and the motion granted, without costs.

Plaintiff seeks to recover $37,426 in insurance premiums

under a liability insurance policy issued to defendants by third-party defendant Robert P. Brady Agency, Inc. for the period May 22, 1985 through May 21, 1986. The policy states the "ESTIMATED PREMIUM" for general liability coverage as $34,847. Attached to the policy is a "Premium Adjustment Endorsement" which explains how the estimated premium was calculated based upon assumptions regarding defendants' payroll and gross receipts for the period of coverage. The endorsement also explains how the actual premium will be determined: "At the end of the policy year we'll make an audit to determine your actual exposure to risk. Then we'll apply the rates shown in the table of [sic] your actual exposure figures developed by the audit. This will determine the premium we've earned." As a result of the audit, defendants' actual premium proved to be more than double the estimated premium, partly because defendants' actual receipts were far above the figures used in the estimate and partly because the rates (by which the payroll is multiplied to arrive at the premium) rose sharply from those quoted in the policy. For example, the rate for bodily injury coverage for contractors at defendants' location No. 1 is listed in the policy as 7.238% with an estimated exposure of $29,907, yielding a premium of $2,165. The rate contained in the audit, however, is 23.45% with actual exposure of $27,500 for a premium of $6,449, almost triple the estimate.

The explanation for the rate increase offered by plaintiff is that the rate used to calculate the estimated premium was based upon the insured's anticipated operations and the expected location of those operations. It is the results of the audit which determine if the insured's operations have been properly classified and rated. The actual operations and the location where the work is performed may differ significantly from the assumptions upon which the estimate was based, with a corresponding effect on the rate charged.

Whatever the merits of the parties' respective positions, it appears that this dispute is not properly before the courts. The Insurance Law requires that an insurer provide "reasonable means whereby any person aggrieved by the application of its rating system may be heard", with a provision for review of its determination by the Superintendent of Insurance (Insurance Law § 2319 [b]; § 2321). Judicial review is available, pursuant to CPLR article 78, of "any order, regulation or decision" issued by the Superintendent (Insurance Law § 326 [a]).

The Insurance Law provides a mechanism for the resolution

of disputes over the application of a rating system, vesting the Superintendent of Insurance with the authority to render a final determination. In the absence of an administrative determination, the issue of the propriety of plaintiff's rates is not ripe for judicial review *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 521, *cert denied* 479 US 985; *Petosa v City of New York,* 135 AD2d 800, 802). Moreover, consideration of this question by the court at this time would impair the doctrine of exhaustion of administrative remedies. "This doctrine furthers the salutory *[sic]* goals of relieving the courts of the burden of deciding questions entrusted to an agency * * * preventing premature judicial interference with the administrators' efforts to develop, even by some trial and error, a co-ordinated, consistent and legally enforceable scheme of regulation and affording the agency the opportunity, in advance of possible judicial review, to prepare a record reflective of its 'expertise and judgment' " *(Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57).

Defendant is relegated to its administrative remedy. Until the Superintendent of Insurance has issued a determination as to the propriety of the rating scheme applied to the risk presented by defendant's operations, there is no final administrative determination which may be the subject of judicial review *(Petosa v City of New York,* 135 AD2d 800, 802, *supra).* Furthermore, the question is one which requires for its resolution the technical expertise possessed by the Insurance Department of the State of New York and, therefore, should not be entertained by the courts in the first instance *(Capital Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11, 22; *Haddad Corp. v Redmond Studio,* 102 AD2d 730). In the absence of an administrative determination in its favor, defendant remains liable for the payment of premiums under the terms of its policy with plaintiff. Concur—Kupferman, J. P., Ross, Kassal and Rubin, JJ.