OPINION OF THE COURT
Walter B. Tolub, J.
*254 This is an action to compel defendants to restore a land-marked building to “good repair.”
The plaintiff is the New York City Landmarks Preservation Commission, which, pursuant to title 25 of the Administrative Code of the City of New York is charged with the duty to promote and preserve the general welfare of the City, enhance the City’s educational and cultural interests and to promote and strengthen its economy, commerce, and industry through and by means of the preservation, protection, and maintenance of buildings, structures, places, districts, and areas of historic or esthetic value or interest, significant in the history, growth, and development of the City, State or the United States.
The defendants are the current owners of the Skidmore House, a 159-year-old “Greek revival residence” located at 37 East 4th Street in Manhattan. The building was designated as a landmark in 1970.
The claim, simply stated, is that, since acquiring the Skid-more House in 1988, the defendants have failed to maintain it and have allowed it to deteriorate to such an extent that its roof collapsed and the architectural elements that make it a landmark are at risk of being lost. Plaintiff seeks, in what is admittedly a case of first impression, to compel the defendants to undertake such work as is necessary to (1) make the exterior of the building watertight so as to prevent deterioration, decay, damage, or disrepair; (2) maintain the significant architectural elements on the exterior to prevent deterioration, decay, damage or disrepair; and (3) maintain all of the interior of the building to avoid deterioration, decay, damage or disrepair.
Defendants’ opposition to the instant application is based on the contention that (1) the Skidmore House was never designated as a landmark; (2) the premises are currently in fact in “good repair”; and (3) that plaintiff’s interpretation of “good repair” is unreasonable.
Landmark Designation
Plaintiff presented at the hearing of this matter a certified copy of the minutes of the Landmarks Preservation Commission, dated August 18, 1970, designating the Skidmore House as a landmark, and a certified copy of the minutes of the Board of Estimate’s resolution of October 8, 1970 approving the designation (exhibit 14) of the Skidmore House as a landmark.
Defendants sought to challenge that designation by presenting certified copies of the City Record of February 2nd, 3rd and *255 17th; and August 11th and 18th of 1970. Additionally, the defendants submitted copies of the calendars of the Commission for February 3, 1970 and March 31, 1970. These records establish that the Skidmore House was noticed for a hearing in the February 2nd City Record, and that a public hearing was held on February 3, 1970. According to the records, the matter was called, and the hearing was “closed,” on that very day. The records also establish that there was no notice in the City Record of the calendaring of this matter before the Commission on August 18, 1970 for a vote. Defendants argue that the failure to give this notice is fatal to its designation, and defendant suggests that perhaps the vote on the matter was never even taken.
At the outset, the court notes that there is a long-established presumption of regularity in that it is presumed that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done (Matter of Whitman, 225 NY 1 [1918]; Culp v City of New York, 146 App Div 326 [2d Dept 1911]). That presumption compels an adversary to come forward with affirmative evidence of unlawful or irregular conduct. Substantial evidence is required to overcome the presumption of legality (People v Harris, 61 NY2d 9, 16 [1983]; Matter of Baumann & Sons Buses v Patchogue-Medford Union Free School Dist., 231 AD2d 566 [2d Dept 1996]).
Defendants have failed to provide sufficient evidence of substantial or irregular conduct to overcome the presumption. Although there may have been a failure to provide notice of the vote at the Landmarks Preservation Commission, the balance of the evidence is consistent with and confirms the Landmarks Preservation Commission’s action and the Board of Estimate’s resolution. Accordingly, the court finds that the Skidmore House was duly designated as a landmark.
“Good Repair”
Administrative Code of the City of New York § 25-311 provides as follows:
“§ 25-311. Maintenance and repair of improvements.
“a. Every person in charge of an improvement on a landmark site or in an historic district shall keep in good repair (1) all of the exterior portions of such improvement and (2) all interior portions thereof which, if not so maintained, may cause or tend to *256 cause the exterior portions of such improvement to deteriorate, decay or become damaged or otherwise to fall into a state of disrepair.
“b. Every person in charge of an improvement containing an interior landmark shall keep in good repair (1) all portions of such interior landmark and (2) all other portions of the improvement which, if not so maintained, may cause or tend to cause the interior landmark contained in such improvement to deteriorate, decay or become damaged or otherwise fall into a state of disrepair.
“c. Every person in charge of a scenic landmark shall keep in good repair all portions thereof.”
The evidence is quite persuasive that since the defendants acquired the property in 1988 they have made minimal repairs and that the landmark building is currently in a dismal state of disrepair. Plaintiff characterizes defendants’ conduct as “demolition by neglect.”
Plaintiff testified to the numerous efforts made to persuade the defendants to make repairs, the permits that were issued, and the frustration which led to the instant application. Significantly, only after the roof collapsed, sometime in the summer of 2002, was this action commenced.
The evidence demonstrates that, as early as 1995, a visual inspection of the exterior of the premises noted that the premises were open to the elements and the public area was strewn with garbage. The report went on to detail the deterioration of the exterior features of the building (plaintiffs exhibit 2). By May 2002, after the collapse of a portion of the roof, an inspection revealed that
“[t]he front vestibule, behind the front door has suffered extensive damage from water infiltration. The plaster is falling from the walls, and later ornamental metal ceiling has collapsed. The stair hall also exhibits water damage at the ceiling and walls, although to a lesser extent. The floors in both areas and in the parlor are swollen and buckling from water damage. Because of the roof collapse, we did not go beyond the front of the main stair wall. However, the extent of the roof failure was emphasized by the amount of daylight visible at the top of the staircase.”
The interior has also suffered from a minor fire, which charred the original moldings around the door leading from the *257 stair hall into the parlor. This damage has occurred since the Commission’s approval of certificate of appropriateness and modification of use applications in 1991.
A building department inspection dated February 12, 2003 further describes the building’s state of disrepair, noting:
“While conducting my inspection I found the following: the building to be open at the roof at the front portion of the building exposing the interior to the weather, there was a beam spanning across the fireplace carrying a few floor joists (and this was typical [throughout] all floors). Due to extensive water damage this beam gave way collapsing only the floor joists in front of the fireplace at all floors. The exterior building walls and chimney shown no signs of distress or cracking. There were approximately seven roof beams missing (could have been removed during construction). In conclusion, the building appeared in line and plumb, structurally sound and with proper safety measures can be repaired, renovated, and reoccupied” (exhibit to Motion Sequence 2).
In the course of this litigation, the roof was, in fact, repaired, and, to the extent that the original complaint sought to compel defendants to repair or replace the roof, that issue is now moot. The remaining issue is the extent to which defendants may be compelled to undertake the repairs to the exterior and interior of the landmarked premises.
Plaintiff seeks to compel defendants to undertake the exterior repairs recommended in the examination and report dated June 3, 2004, the so-called “Neeley” Report (exhibit 6), along with repairs to the interior of the premises.
William Neeley, the Director of the Historical Preservation Grant Program, inspected the exterior of the premises in May of this year and prepared a Facade Assessment Report. The report, which remains uncontradicted, sets forth in some detail the steps necessary to bring the facade of the building to a state of “good repair.” The court is persuaded that the building is currently in a state of disrepair, and that the repairs sought by plaintiff are necessary to stabilize the Skidmore House, and bring it to a state of “good repair.”
In this regard, the court notes that whether or not the Skid-more House has been kept in a state of “good repair” is, in the first instance, a matter to be determined by the Commission. *258 Courts will defer to a determination of an administrative agency when that decision falls under the purview of the agency’s expertise (Matter of Committee to Save Beacon Theater v City of New York, 146 AD2d 397 [1st Dept 1989]). A court will only intervene where an agency’s determination is unreasonable (Matter of Teachers Ins. & Annuity Assn. of Am. v City of New York, 82 NY2d 35 [1993]), or lacks a rational basis (Matter of Society for Ethical Culture v Spatt, 68 AD2d 112 [1st Dept 1979]). In the instant case, the Landmarks Commission’s interpretation is reasonable, rational, and was substantiated by the evidence presented at the hearing.
Defendants’ second argument at trial was that its obligation is limited to keeping the landmark in the state of repair that existed at the time of its designation and that, in that regard, defendants have fulfilled their obligation. That argument must fail because even were the court to accept that defendants’ obligation is limited to maintaining the landmark in its condition at the time of designation, the evidence is clear that defendants have allowed the facade of the Skidmore House to deteriorate. The photographs which accompanied the original application for designation (plaintiffs exhibit 7) demonstrate the deterioration that the facade of the Skidmore House has endured under the stewardship of the defendants. The repairs undertaken by the defendants have been simply inadequate to maintain the landmark in the state of repair at the time of its landmark designation.
Finally, and with respect to plaintiffs request to have the interior of the premises brought to a state of “good repair,” the court notes that, although Administrative Code § 25-311 (b) requires that the interior of a landmark be kept in “good repair,” and the court would have no hesitancy in issuing an order to effectuate the restoration of any existing conditions, plaintiff has failed to provide the court with a current assessment of the condition of the interior condition of the Skidmore House. Plaintiff should be afforded an opportunity to perform an inspection of the interior to determine if judicial intervention is required.
Accordingly, it is ordered that defendants forthwith submit a complete application to the Commission to permanently repair and restore the exterior of the Skidmore House to a state of “good repair,” which application should include the repair of all items identified in the Neeley Report, and it is further ordered that the Commission shall be given access to the interior and *259 rear of the property to survey the landmark and determine if other repairs are necessary; and it is further ordered that defendants permanently repair and restore the exterior of the Skidmore House to a state of “good repair” in an expeditious manner upon the issuance of a permit or permits by the Commission; and it is further ordered that defendants are permanently enjoined to maintain the Skidmore House and to keep in “good repair” all exterior portions and all interior portions which if not so maintained may cause or tend to cause the exterior portions of such improvement to deteriorate or otherwise fall into a state of disrepair.