In the Matter of HOSPITAL ASSOCIATION OF NEW YORK STATE et al., Appellants, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents. (Proceeding No. 1.)

In the Matter of NEW YORK STATE CONFERENCE OF BLUE CROSS AND BLUE SHIELD PLANS, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, Respondent, and HOSPITAL ASSOCIATION OF NEW YORK STATE et al., Proposed Intervenors-Appellants. (Proceeding No. 2.)

Third Department, December 27, 1990

520

### APPEARANCES OF COUNSEL

*Segal, Sherrin & Glasel (Jeffrey J. Sherrin* of counsel), for appellants.

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for David Axelrod and others, respondents.

*Hinman, Straub, Pigors & Manning, P. C. (Bartley J. Costello, III,* of counsel), for New York State Conference of Blue Cross and Blue Shield Plans, respondent.

*Harry Franklin (Carol G. Dunham* of counsel), for Committee of Interns and Residents, *amicus curiae.*

*Le Boeuf, Lamb, Leiby & MacRae (Jay G. Safer, Sally A. Morris* and *Ellen C. Connolly* of counsel), and *Donald Moy* for The Medical Society of the State of New York, *amicus curiae.*

### OPINION OF THE COURT

MIKOLL, J.

The Department of Health (hereinafter DOH) promulgated new regulations (10 NYCRR part 405) which, *inter alia,* limit the number of hours interns and residents, i.e., postgraduate trainees (hereinafter PGTs), may work at hospitals, expand requirements for their supervision, and require all hospitals to provide sufficient ancillary and support services to relieve nurses and house staff from nondirect patient care management duties. This litigation arises out of the claimed adverse effect of these new regulations, along with the resulting increased costs due to such changes and the amount and manner of compensating the hospitals through reimbursement. Petitioner Hospital Association of New York State (hereinafter HANYS) is a nonprofit corporation made up of 280 public health care providers located in the State. The majority of its members consist of general hospitals including the five individual hospitals named as petitioners in proceeding No. 1.

DOH is responsible for ensuring that hospitals and other health-related facilities, established in accord with the requirements of the Public Health Law, provide health care of the highest quality, and that health care services are efficiently provided and properly utilized at a reasonable cost *(see,* Public Health Law § 2800). Title 10 of the NYCRR contains regulations establishing minimum standards for hospital oper-

ation. These operating standards must be adopted by the State Hospital Review and Planning Council (hereinafter SHRPC) (Public Health Law § 2803 [2]) and must at least equal the standards and procedures that Federal law and regulations require under Social Security Act title XVIII (Medicare) and XIX (Medicaid) programs (Public Health Law § 2803 [2] [a] [v]).

The United States Health Care Financing Administration promulgated revised Medicare and Medicaid conditions of participation for hospitals on or about June 16, 1986 (see, 42 CFR part 482). In response to these new Federal regulations and a recent New York City Grand Jury investigation into the death of a patient at a major teaching hospital, DOH undertook revision of its related State regulations contained in 10 NYCRR part 405. In order to carry out this task, respondent Commissioner of Health impaneled an Ad Hoc Advisory Committee on Emergency Services (hereinafter the Bell Committee). In June 1987, the Bell Committee issued recommendations that were ultimately incorporated into the new regulations contained in 10 NYCRR part 405.

On September 2, 1987, DOH published in the State Register a notice of proposed rule making to adopt a new 10 NYCRR part 405 which, with respect to the curtailment of the working hours of PGTs, provided that: "Though not yet drafted, under consideration for inclusion are limits on consecutive working hours of physicians and other practitioners granted privileges by the medical staff in the inpatient, ambulatory, and emergency service settings." These proposed regulations were next referred to the Code Committee of SHRPC, which held four public hearings and several open meetings to review industry, consumer and interest group comments on the proposed changes. The Bell Committee issued its final report in October 1987, including recommendations on the working hours of PGTs. This report also contained the statement that all its recommendations "are based on the understanding that [DOH] will make available to hospitals the necessary funds to implement the recommendations".

The Code Committee recommended approval of the new regulations, stating that:

"Some of the new requirements will prove to be expensive to implement. [DOH] has recognized this, and has pledged that it will find the necessary funds to make the changes possible.
* * *

"The committee's support for the code is dependent upon these conditions being met."

A notice of adoption of the new regulations was published in the State Register on August 31, 1988. The revised regulations became effective January 1, 1989, except for the proviso limiting the working hours of PGTs to 12 consecutive hours in busy emergency rooms, which was effective October 1, 1988. Other provisions, in particular those limiting the number of consecutive PGT working hours, became effective July 1, 1989.

DOH conducted two separate surveys of State teaching hospitals with busy emergency departments. The first survey revealed that hospitals would incur appreciable costs in complying with the changes. The second later survey identified these increased costs with reference to specific hospitals. DOH then made certain adjustments adding $22 million to reimbursable inpatient costs for rates effective January 1, 1989 with a further $226 million recommended for the requirements effective July 1, 1989.

The petition in proceeding No. 1 sets forth 14 causes of action which seek annulment of all or portions of 10 NYCRR part 405 as arbitrary, capricious and an abuse of discretion or that its enforcement be enjoined until respondents develop methodologies approved by the court and with the cooperation of petitioners for the full costs of compliance. The first cause of action claims that certain revisions impose staffing requirements which cannot be met; the second cause of action contends that SHRPC was improperly constituted at the time it adopted the regulations; the third through eleventh causes of action essentially allege that the regulations fail to provide adequate reimbursement; the twelfth cause of action asserts that the State Administrative Procedure Act was violated in adopting the regulations; the thirteenth cause of action alleges the absence and inadequacy of administrative review procedures; and, lastly, the fourteenth cause of action claims that respondents are without authority to limit the education and training of PGTs. In their answer, respondents deny the merits of each of the causes of action and assert as affirmative defenses that the proceeding is time barred, that it is not ripe for adjudication and that petitioners have failed to exhaust available administrative remedies.

Supreme Court dismissed the first, second, twelfth, thirteenth and fourteenth causes of action on various individual grounds and dismissed the remaining nine causes without prejudice on the ground that the causes pleaded were not ripe for review and, therefore, the court did not have the authority

to grant the relief requested (145 Misc 2d 345). Thereafter, petitioners asked for reargument regarding the twelfth cause of action, which had been dismissed on the ground that the Statute of Limitations had run. Reargument was granted but that cause of action was again dismissed, this time on the merits. This appeal ensued. Also before this court is petitioners' appeal from Supreme Court's judgment denying petitioners' motion to intervene in proceeding No. 2.

Supreme Court properly dismissed the petition in proceeding No. 1 and properly denied petitioners' request for intervention in proceeding No. 2. The judgments entered in each proceeding should therefore be affirmed.

■ Petitioners' contention that their second and twelfth causes of action were improperly dismissed on the ground that the four-month Statute of Limitations expired has merit. However, after reargument, the second and twelfth causes of action were properly dismissed on the merits. The challenges to the second and twelfth causes were procedural and the four-month Statute of Limitations governing CPLR article 78 proceedings applies (see, Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 202). Petitioner's action was commenced on April 25, 1989 and the regulations in question, although enacted earlier, became effective January 1, 1989 or July 1, 1989. "[W]here a determination is made on one date to become effective at a later date, the determination does not become 'final and binding' for purposes of the Statute of Limitations until the date it becomes effective" (Matter of Wininger v Williamson, 46 AD2d 689, lv denied 36 NY2d 648). Thus, petitioners' proceeding was timely commenced relative to the second and twelfth causes of action.

■ Turning to the merits of the second cause of action, we reject petitioners' contention that, because SHRPC was illegally constituted in alleged violation of the specific membership requirements of Public Health Law § 2904, the regulations promulgated by the Commissioner are null and void. As SHRPC is an advisory body under Public Health Law § 2904 and has no independent regulatory powers (see, Public Health Law § 2803 [2] [a]), the Commissioner is not bound by its recommendations. Thus, even if SHRPC was illegally constituted, the Commissioner could still consider its advisory recommendation, as it could that of any other body or source in making a determination.

■ Considering the merits of the twelfth cause of action,

petitioners' contention that DOH did not comply with provisions of State Administrative Procedure Act §§ 202 and 202-c, in that it failed to specifically state the precise limits on the working hours of PGTs is without merit. "Prior to the adoption of a rule, an agency shall submit a notice of proposed rule making to the secretary of state for publication in the state register and shall afford the public an opportunity to submit comments on the proposed rule" (State Administrative Procedure Act § 202 [1] [a]). The notice must specify, *inter alia,* the complete text of the proposed rule unless the text exceeds 2,000 words, in which case a summary may be provided (State Administrative Procedure Act § 202 [1] [f] [v]). The agency must also provide the Office of Business Permits and Regulatory Assistance with a complete copy of the text (State Administrative Procedure Act § 202-c [2]).

The record supports Supreme Court's finding of substantial compliance with the notice requirements of the State Administrative Procedure Act *(see,* State Administrative Procedure Act § 202 [8]; *see also, Matter of Industrial Liaison Comm. v Williams,* 72 NY2d 137, 144-145). The summary was reasonably precise at that time as the Bell Committee had not yet finalized its recommendations on PGT working hours. In addition to public hearings, SHRPC held a special two-day meeting to gather added public commentary on the proposed regulations, with invitations to attend sent to HANYS and other interested groups.

We also reject petitioners' argument that Supreme Court improperly dismissed petitioners' third through eleventh causes of action on the ground that they were not ripe for review. To determine "ripeness", it is necessary " 'first to determine whether the issues tendered are appropriate for judicial resolution, and second to assess the hardship to the parties if judicial relief is denied' " *(Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510, 519, *cert denied* 479 US 985, quoting *Toilet Goods Assn. v Gardner,* 387 US 158, 162). "The 'appropriateness' inquiry looks to whether the administrative action being reviewed is final and whether the controversy may be determined as a 'purely legal' question" *(Church of St. Paul & St. Andrew v Barwick, supra,* at 519). However, "[e]ven if an administrative action is final * * * it will still be 'inappropriate' for judicial review and, hence, unripe, if the determination of the legal controversy involves the resolution of factual issues * * * or consideration of extraneous problems or factors beyond the legal question presented" *(supra,* at 519).

Applying these standards to the instant situation, where petitioners concede that "major, unresolved issues of fact exist as to the nature and details of [r]espondents' cost determination methodology", the nine dismissed causes of action are not appropriate for judicial resolution. The nine causes of action also are inappropriate for judicial review and, therefore, not ripe, because the harm to petitioners "may be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party" (supra, 67 NY2d, at 520). The reimbursement process was ongoing at the time of the commencement of proceeding No. 1 and administrative remedies were available (see, 10 NYCRR 86-1.17, 86-1.61).

Petitioners assert that with respect to those regulations effective July 1, 1989, the Commissioner "approved rates for all payors to reimburse hospitals for the costs of caring for all patients, whether Medicare or non-Medicare patients" but as to regulations effective January 1, 1989 the Commissioner "announced that he would not adjust rates to reimburse hospitals for the costs attributable to all patients. Rather, [the Commissioner] would reduce hospitals' reimbursement for the January costs by the amount that would be allocable to the treatment of Medicare patients." They allege that this results in an $18 million annual loss. Respondents furnish no reason for this disparity in the treatment of Medicare and non-Medicare patients. The relief requested by petitioners in this connection must be sought administratively (see, 10 NYCRR 86-1.17, 86-1.61).

■ We reject petitioners' further argument that the failure of the Commissioner to fully reimburse them for all costs associated with complying with the new regulations constitutes a taking without compensation. Petitioners do not have an identifiable property interest in such funds. The fact that petitioners will sustain interim operating losses until such time as it is reasonably required to adjust to the new regulations is not, in and of itself, an unjust taking (see, Birnbaum v State of New York, 73 NY2d 638, 646).

■ There is also no merit to petitioners' claim, regarding the fourteenth cause of action, that the new regulations imposing a limit on the hours PGTs may work are beyond the authority of DOH to regulate and an infringement upon the authority of the Commissioner of Education and the Board of Regents to regulate medical residency programs. Clearly, DOH and SHRPC are given authority to establish minimum acceptable hospital care and safety standards and procedures (Public

Health Law § 2803 [2] [a] [v]), and the Commissioner of Education is authorized to promulgate rules and regulations pertaining to the educational requirements necessary to obtain a license to practice medicine in this State (Education Law § 6500 *et seq.; see also, Interfaith Med. Center v Sabiston,* 136 AD2d 238, 239-240). However, the new regulations limiting the work hours of PGTs (10 NYCRR 405.4) appear to rationally relate primarily to patient care and safety in the circumstances of proceeding No. 1. The dismissal of the petitioners' fourteenth cause of action was therefore proper.

Finally, petitioners' assertion, that Supreme Court abused its discretion in denying, as exceedingly untimely, petitioners' motion to intervene in proceeding No. 2 because CPLR 7802 (d) affords Supreme Court broad discretion to allow "other interested persons to intervene", lacks merit. Petitioners became aware of the second proceeding in June 1989 but did not move to intervene for four months, until after all the pleadings had been served, oral argument had been had and Supreme Court had rendered judgment in both proceedings Nos. 1 and 2 herein. Moreover, the only issue in proceeding No. 2—whether the Commissioner of Health could compel the payment of additional costs related to Medicare patients—did not affect petitioners' attack on the new part 405 regulations (proceeding No. 1). Consequently, Supreme Court did not abuse its discretion in denying the motion to intervene.

We have considered petitioners' other arguments for reversal and find them to be without merit.

KANE, J. P., YESAWICH, JR., LEVINE and MERCURE, JJ., concur.

Judgments affirmed, without costs.