[646 NYS2d 402]

In the Matter of DAVID LICHTEN et al., Appellants, v STATE UNIVERSITY OF NEW YORK AT ALBANY et al., Respondents. (Proceeding No. 1.)

In the Matter of JAMES KANE et al., Appellants, v STATE UNIVERSITY OF NEW YORK AT ALBANY et al., Respondents. (Proceeding No. 2.)

Third Department, July 25, 1996

## APPEARANCES OF COUNSEL

*King & Spalding,* New York City *(Stefan W. Engelhardt, Bernays T. Barclay, Michael E. Norton* and *Caryn B. Gottlieb* of counsel), and *Wein, Young, Fenton & Kelsy, P. C.,* Guilderland, for appellants.

*Dennis C. Vacco, Attorney-General,* Albany *(Julie S. Mereson* and *Peter H. Schiff* of counsel), for respondents.

## OPINION OF THE COURT

CASEY, J.

In an effort to achieve "a more gender equitable [intercollegiate athletic] program within the fiscal conditions of the State University of New York", respondent State University of New York at Albany (hereinafter SUNYA) determined in June 1994 that certain changes should be made to its varsity sports program, including the elimination of wrestling, men's tennis, and men's and women's swimming. At the same time, women's field hockey and women's golf were added. A number of SUNYA student-athletes affected by the determination commenced a CPLR article 78 proceeding to challenge the elimination of the four varsity athletic teams. The proceeding was resolved in August 1994 when the parties consented to an order of discontinuance in which SUNYA agreed to the full reinstatement of the four teams for the 1994-1995 school year. In the order, SUNYA also agreed to certain measures to "mitigate the impact of any future decision to terminate programs or reduce them to less-than-varsity status". Among the mitigation measures was the requirement that all changes be "made in accordance with appropriate University procedures".

In March 1995, SUNYA again determined that the four varsity teams should be eliminated as varsity sports, but encouraged as club sports, beginning in the 1995-1996 school year. Several adversely affected student-athletes promptly commenced a CPLR article 78 proceeding (proceeding No. 1) to challenge the determination, and they also moved in the context of the prior proceeding for an order of contempt (proceeding No. 2) based upon allegations that respondents violated the stipulated terms of the order of discontinuance. Supreme Court dismissed the petition in proceeding No. 1 and

denied the motion in proceeding No. 2, resulting in these appeals by petitioners.

Petitioners' main argument on appeal is that the March 1995 determination was not made in accordance with appropriate University procedures. Their argument focuses on the role of SUNYA's Intercollegiate Athletics Board (hereinafter IAB), which is responsible to and advises SUNYA's president on intercollegiate athletic program matters. The IAB's purpose is to "monitor, review, and recommend policy" and to formulate an intercollegiate athletic budget to recommend to SUNYA's president for approval. The IAB is also responsible for "reviewing existing programs and responding to proposals for adding or deleting specific sports programs, including the monitoring of Title IX[*] review and compliance". The IAB is comprised of four faculty members, two administrators and five students.

In November 1994, the president of SUNYA directed the IAB to review SUNYA's intercollegiate athletic program and to make recommendations for bringing the program into compliance with Title IX. In formulating its recommendations, the IAB was directed to consider a number of factors and to assume that funding would remain at the current levels. The IAB complied with its mandate and, after soliciting comments from students, faculty and other interested parties, recommended the elimination of varsity status for men's and women's swimming, men's tennis and junior varsity men's basketball, and that women's crew be upgraded from club status to varsity status. As previously set forth, the final determination by SUNYA's president differed from the IAB's recommendation in that wrestling was eliminated instead of junior varsity men's basketball and the status of women's crew was not upgraded.

Petitioners contend that the determination must be annulled because the IAB was improperly constituted. Pursuant to the IAB bylaws, the five student members were to be appointed by the president of SUNYA, based upon nominations by the president of the Student Association having the concurrence of the Central Council of the Student Association. The five student members appointed to the IAB were those recommended by the president of the Student Association, but the association's president did not obtain the concurrence of the Central Council before submitting the nominations. As the

* Title IX refers to Federal law which mandates gender equality in intercollegiate athletics at educational institutions, such as SUNYA, which receive Federal financial assistance (see, 20 USC § 1681).

IAB is only an advisory body, its alleged "improper constitution" does not affect the validity of the determination made by the president of SUNYA, who is the officer with the ultimate authority to make the final determination (*see, Matter of Hospital Assn. v Axelrod,* 164 AD2d 518, 524). We also note that petitioners did not directly challenge the determination to appoint the five student members when it was made.

Petitioners also contend that the determination must be annulled because it was based in part on financial considerations. According to petitioners, university procedures were violated because the IAB had not yet formulated the annual intercollegiate athletic budget and recommended it to SUNYA's president for approval, which is one of the IAB's responsibilities. We find the argument meritless. The formulation of the annual intercollegiate budget and compliance with the gender-equality requirements of Title IX are clearly separate and distinct matters. Contrary to Supreme Court, we conclude that the mere consideration of current fiscal conditions by SUNYA's president in deciding whether to eliminate and/or add varsity teams to comply with Title IX did not convert the determination regarding gender equality into the adoption of the annual intercollegiate athletic budget or any part thereof. Financial considerations were clearly relevant to the final determination concerning compliance with Title IX, and considering the IAB's advisory role in both the Title IX compliance and the budgetary process, we see no basis to disturb the determination. Petitioners' claim that the determination lacked a factual basis because SUNYA's president could have had no knowledge of the relevant current fiscal conditions without any direct input from the IAB is patently meritless. The record discloses that the responsibilities of SUNYA's president would clearly make him knowledgeable with regard to the relevant fiscal conditions of the State University system in general and SUNYA in particular.

With regard to petitioners' contempt motion based upon alleged violations of the order entered on consent in proceeding No. 2, we conclude, for the reasons already set forth, that the final determination to eliminate certain varsity teams was made in compliance with relevant university procedures. The motion was therefore properly denied.

CARDONA, P. J., MERCURE, WHITE and PETERS, JJ., concur.

Ordered that the judgments are affirmed, without costs.